**Henry Charles NOYES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–9.**

Court of Criminal Appeals of Oklahoma.

Nov. 30, 1973.

E. Terril Corley, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

PER CURIAM:

Appellant, Henry Charles Noyes, hereinafter referred to as defendant, was charged by information originally filed on the 10th day of June, 1968, with the offense of First Degree Rape in the District Court of Tulsa County, Oklahoma. On the 27th day of June, 1968, the defendant was committed to Eastern State Hospital for observation and all criminal proceedings were subsequently stayed until further order of the trial court. On or about the 7th day of January, 1969, the defendant was certified as psychotic and remained at Eastern State Hospital under treatment. On the 31st day of July 1972, the hospital notified the trial court that the defendant's illness had responded to treatment and that he was considered mentally competent and able to be discharged from the hospital. On the 27th day of November, 1972, trial was commenced before a jury and the defendant was convicted of the charge and sentenced to serve a term of ninety-nine years imprisonment in the State Penitentiary. From said judgment and sentence the defendant has perfected his timely appeal.

The defendant appeals on a partial transcript of the trial proceedings. The transcript reflects that the State first called the complaining witness Mrs. Virgil Marshall who testified that on the 1st day of June, 1968, she was a seventy-seven year old widow residing in Tulsa, Oklahoma. The defendant and his brother had performed some maintenance work on her home in the past and on the date in question the defendant came by her home for the purported purpose of checking a leak on the back porch. The defendant then

proceeded to grab Mrs. Marshall, force her to the bedroom and violently raped her on numerous occasions. Mrs. Marshall described the incident in detail and stated that after the attack the defendant threatened to come back and kill her if she called the police. She then testified that although at the preliminary hearing she did not recall numerous tattoos on the defendant's body, she did now recall them.

Mrs. Marshall's daughter then testified that upon receiving a report from her mother of the rape, she immediately went to the home and took her mother to a doctor for examination and treatment.

Dr. H. C. Baldwin then testified that he treated Mrs. Marshall on the evening in question. He further testified that he examined her and found that she had been assaulted, that there was a tear in the vaginal mucosa and that a microscopic examination of a vaginal smear found non-viable male sperm cells. The State then rested.

The defendant called two witnesses whose testimony does not appear in the partial transcript. The last witness called by the defendant was Dr. Ernest Shadid, a psychiatrist employed as Assistant Director of Mental Health for the State of Oklahoma and Extension Superintendent at Central State Hospital in Norman, Oklahoma. Dr. Shadid testified that upon the defendant's admission to the hospital a number of tests and examinations were run and that on the 7th day of January, 1969, a final diagnosis was made which indicated that the defendant was suffering from schizophrenia. The doctor further testified that it was his opinion that the defendant was suffering from mental illness on the 1st day of June, 1968, and that the defendant would not have been able to distinguish the difference between right and wrong.

Over the vigorous objection of the defendant and after being directed to so testify by the trial court, Dr. Shadid on cross-examinztion read into the record a portion of the medical records setting forth certain incriminating statements made by the defendant to a psychologist while under treatment. The medical record which was read to the jury reflected that the defendant admitted to the psychologist that he had committed the rape. The defendant further stated that he had previously been on a mental ward attached to a prison and that the allegations against him at the time were armed robbery. The defendant was subsequently paroled under a psychiatrist's care, violated said parole and came to Oklahoma in July of 1967.

■ The defendant's first proposition in error urges that the trial court erred in allowing the State to bolster the testimony of the complaining witness as to the identification of the defendant when her testimony on direct examination had not been contradicted. At the preliminary hearing the victim was asked by defense counsel if the assailant had any distinguishing marks on his body. She stated that she did not see any unusual physical characteristics on the body of the attacker who had on only a short sleeved T-shirt during the assault. At the trial the State on direct examination asked Mrs. Marshall if she recalled anything unusual about the defendant's physical appearance at the time of the incident. She stated that she vaguely recalled some tattoos. The State then asked over defendant's objection whether she recalled testifying at the preliminary hearing and stating that there were no unusual physical characteristics. Mrs. Marshall answered affirmatively and then stated that after the preliminary hearing she did recall some tattoos.

In Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451, in paragraph 17 of the Syllabus by the Court this Court held as follows:

"It is not competent to introduce testimony as to what a witness may have sworn or stated on some previous occasion, simply to confirm or bolster up the testimony of said witness as delivered before the jury, in the absence of some attack on the testimony of said witness,

as by showing that the witness had sworn differently or stated differently to the testimony delivered on the trial of the case, or in the absence of some effort made to impeach the witness."

It is therefore our opinion that the defendant's objection was timely and proper and that the testimony objected to was inadmissible.

The defendant's next two propositions in error contend that the trial court committed reversible error in ordering the defendant's expert witness to testify under cross-examination as to certain incriminating statements made by the defendant while undergoing treatment in a state mental hospital and to further testify as to the defendant's admission that he had a previous felony conviction. With this contention we wholeheartedly agree. As stated above, Dr. Shadid, after being directed by the trial court, read into the record certain notes and records of a psychologist found in the medical records of the defendant which reflected an admission by the defendant that he had committed the crime charged, had previously been convicted of armed robbery and had violated parole. The record also shows that defense counsel duly objected to the witness reading that portion of the medical record and immediately thereafter moved for a mistrial.

The purpose of a compulsory mental examination is to determine if an accused is competent to stand trial and if the accused was sane at the time of the commission of the crime. It is not the purpose of said examination to interrogate the accused to determine his guilt or innocence.

█ Personnel of a state mental institution who have conducted a compulsory mental examination of an accused in a criminal prosecution may not, over proper objection, reveal any confession, inculpatory statement or other declaration implicating the accused in the crime charged which is made by the accused in the course of such examination. State v. Myers, 220 S. C. 309, 67 S.E.2d 506 (1951) and State v.

Raskin, 34 Wis.2d 607, 150 N.W.2d 318 (1967). The same rule obviously applies if the accused is a certified psychotic and undergoing treatment. To allow the doctor in this particular situation to testify from the medical records as set out above violates both the defendant's constitutional privilege against self-incrimination and the doctor-patient privilege.

This Court has held on many occasions that generally, when a defendant is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and evidence of other crimes prior or subsequent to the offense for which he is on trial is inadmissible. Henderson v. State, Okl.Cr., 490 P.2d 786; Dooley v. State, Okl.Cr., 484 P.2d 1324. Common sense dictates that said principle must be applied in the present case. To hold otherwise would place an accused in an untenable position. He would be subject to compulsory examination where a knowledge of his past history is often necessary before his mental condition could be properly diagnosed and treatment prescribed; yet, under the circumstances of the instant case, any statements he might make in providing said past history would go to a jury.

█ The defendant further urges that the prosecutor made improper comments during closing argument which inflamed the passion and prejudice of the jury against the defendant, all of which constituted reversible error. An examination of the partial transcript reflects that the prosecutor made the following statement during his closing argument, to-wit:

". . . I do not know what is a proper punishment in this particular case. I don't know whether it is five hundred years, a life time, a thousand years or what. But, I know this: when you are talking about punishment or legal incarceration as a form of punishment within this state, that that man ‾right there, by his *record* and by the evidence in this particular case, is a danger to the public safety." (emphasis added)

The record further reflects that the defendant objected to the above comment and moved immediately for a mistrial which was denied by the trial court. The remark of the prosecutor was obviously improper since the record of the defendant was not properly before the jury.

For the reasons set out above we are therefore of the opinion that this cause should be and the same is accordingly reversed and remanded for a new trial consistent herewith.