Niles Raymond BOSIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–33.

Court of Criminal Appeals of Oklahoma.

May 31, 1977.

Rehearing Denied July 11, 1977.

Mary Bane, Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Niles Raymond Bosin, hereinafter referred to as defendant, was convicted in District Court, Oklahoma County, for Rape in the First Degree, in violation of 21 O.S.1971, § 1111, in Case No. CRF–76–73. He was sentenced to twenty-five (25) years' imprisonment and has perfected this timely appeal.

Briefly stated, the testimony indicates that during the morning of December 29, 1975, the prosecutrix was dressing for work when the defendant rang the door bell and asked for a person who did not live there. The prosecutrix, dressed in a long robe and underclothing, invited him into her house to use the telephone book. The remaining testimony reveals that the defendant committed three acts of oral sodomy with the prosecutrix and then had sexual relations with her. The prosecutrix said that when the defendant initiated the encounter she attempted to talk him out of it but stopped when he threatened her with an ice pick he pulled from his back pants pocket. Although the prosecutrix said she did not physically fight back because of fear of the ice pick and the defendant's superior size, she did resist his advances as best she could. She said that during the third act of oral sodomy she worked the ice pick out of the defendant's back pocket and later kicked it under her bed where police found it. After the alleged rape, when the defendant apparently was looking for his missing ice pick, the prosecutrix ran to a neighbor's house and called the police.

The defendant's testimony upon which he relies for reversal, will be set forth later in this opinion.

In his first assignment of error defendant argues the prosecutor committed reversible error during the following three colloques:

(1) When cross-examining the defendant (Tr. 109):

"Q. Have you ever been convicted of a misdemeanor?

"A. Misdemeanor?

"Q. Yes.

"A. What is that?

"MR. HILL: We object to it as improper.

"THE COURT: Sustained."

(2) When cross-examining the defendant (Tr. 116–117):

"Q. Have you ever been convicted of a misdemeanor involving moral turpitude?

"MR. HILL: We already objected to it, Your Honor.

"THE COURT: Be overruled.

"THE WITNESS: What is that, a misdemeanor? Or whatever he said.

"MR. HILL: Your Honor,—

(Whereupon, an off-the-record discussion is had out of the hearing of the jury and this reporter, at the conclusion of which:)

"THE COURT: Okay. Overruled with exception."

(3) Upon cross-examining one of the defendant's character witnesses (Tr. 121–122):

"Q. Sir, in forming your opinion as to the position of the defendant in the community, did you take into consideration the fact that on December the 18th, 1970, this man was arrested and convicted for carrying a concealed weapon?

"MR. HILL: Your Honor—Your Honor. Step up here a minute, please.

(Out of the hearing of the jury:)

"MR. HILL: He's going outside the scope of what we asked for. We asked for truth and veracity. We now ask the Court to declare a mistrial.

"THE COURT: Overruled, exception allowed.

(Within the hearing of the jury;)

"THE COURT: Okay. You may answer the question.

"THE WITNESS: No. I did not.

"Q. (By Mr. Flaugher) You did not take that into consideration? Knowing that to be a fact, sir, would that change your attitude towards this man's position in the community?

"A. No, sir."

This Court, in *Miller v. State*, Okl.Cr., 418 P.2d 220 (1966), set out guidelines for trial courts to follow to assure the good faith of the prosecutor in his cross-examining of defendant's character witnesses. In *Miller*, we urged the court to conduct a preliminary inquiry out of the hearing of the jury in order to satisfy himself:

"(1) [T]hat there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;

"(2) [T]hat a reasonable likelihood exists that the previous arrest or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;

"(3) [T]hat neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;

"(4) [T]hat the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and

"(5) [T]hat the examination will be conducted in the proper form, that is: 'Have you heard, etc.,' not 'Do you know, etc.,' and, if the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose either at the conclusion thereof or in the charge."

We note from the first two colloquies that no prejudice to the defendant resulted in that the objection was sustained in the first and the defendant did not answer in the second. We further note that questioning the defendant regarding convictions for felonies and misdemeanors involving moral turpitude is permitted by statute (12 O.S.1971, § 351) and case law (*Price v. State*, Okl.Cr., 546 P.2d 632 (1976)).

Defendant's objection in the third colloquy was timely but not to the point. He complained that the cross-examination went outside the scope of the direct examination, (but did not question the) good faith of the prosecutor in propounding the question in the first place. Further, the defendant failed to demand a *Miller* hearing which abrogates on appeal any complaint of a lack of such hearing at trial. The *Miller* hearing was not made mandatory on the courts, but only contained a suggested guideline to insure the prosecutor's good faith. We still adhere to that view and recommend a hearing prior to any cross-examining of defendant's character witnesses, if timely requested. We dismiss this assignment of error.

■ In his second assignment of error defendant argues the trial court erred in allowing Policewoman Kenna Hoffman to testify as follows:

"Q. Testifying as an officer who investigated this and also as a woman, did you notice anything unusual about the situation of those underwear?

"A. Usually when a woman takes her own underpanties off—

"MR. HILL: Which we are going to object to, Your Honor.

"MR. FLAUGHER: Your Honor, I believe this would be relevant.

"THE COURT: Overruled.

"THE WITNESS: As I was saying, when a woman takes her own underpanties off, they're not generally rolled or curled up; they're usually just taken off and laid down, inside out or rightside out is beside the point. These were curled or rolled up as if they had been forcibly pulled off her.

"MR. HILL: Which we're going to object to, Your Honor.

"THE COURT: Sustained.

"MR. HILL: Ask the jury to disregard it." (Tr. 77, 78).

There was no response from the Court to defendant's requested admonishment.

No foundation was laid for the testimony of Policewoman Hoffman and therefore her statement was clearly incompetent. Defendant's objection was sustained but the court did not respond to his requested admonishment of the jury to disregard the statement. We are of the opinion that the defendant did not go far enough in preserving the error. He should have followed up his request by asking the court to rule on it, or at least ascertain that the court heard his request. At any rate, we believe that in light of all the evidence this error did not result in a miscarriage of justice or a substantial violation of a constitutional or statutory right, 20 O.S.1971, § 3001.

Defendant argues in his third assignment of error that the trial court allowed the prosecution to bolster the prosecutrix's testimony with hearsay evidence and eviden-

tiary harpoons which denied him a fair trial. Defendant quoted nine colloques from the transcript to bolster his argument. However, timely objections were made to only three of them and as this Court has often said, alleged errors must be properly preserved to be raised on appeal. *Lung v. State,* Okl.Cr., 420 P.2d 158 (1966).

One of three colloques to which proper and timely objections were voiced concerns defendant's second assignment of error, and so we deem it unnecessary to discuss it here. The other two involve questions to police officers asking (1) the description of the defendant given them by the prosecutrix and (2) if the prosecutrix advised them that she had been threatened with an ice pick. Defendant cites *Noyes v. State,* Okl. Cr., 516 P.2d 1368 (1973) for the proposition that,

" 'It is not competent to introduce testimony as to what a witness may have sworn or stated on some previous occasion, simply to confirm or bolster up the testimony of said witness as delivered before the jury, in the absence of some attack on the testimony of said witness . . . .' "

■ *Noyes* and the case it cited as authority, *Doser v. State,* 88 Okl.Cr. 299, 203 P.2d 451 (1949), are clearly distinguishable as they deal with a witness bolstering his own testimony while this case concerns testimony from police officers regarding information given to them by the prosecutrix. Testimony concerning the ice pick is competent because the defendant specifically denied the threat, and testimony regarding the description of the defendant, even if cumulative, resulted in no prejudice to the defendant, as he admitted that the described acts occurred, disputing only the underlying circumstances. See, 20 O.S.1971, § 3001. We therefore dismiss this assignment of error.

In defendant's fourth assignment of error he contends the trial court erred in denying his requested instruction of his theory of defense which amounted to consent of the prosecutrix and mistake of fact.

■ Defendant correctly argues that he is entitled to an instruction on his theory of defense, provided there is evidence to support it. *Gann v. State,* Okl.Cr., 397 P.3d 686 (1964).

■ From a thorough reading of the transcript we find little evidence to bolster defendant's argument. No where in his testimony did defendant state that the prosecutrix gave her affirmative consent. Even from his own testimony the closest he can come to consent is when he stated she "raised up" when he moved to take off her underpants (Tr. 96) and the following colloquy occurring at Tr. 99:

"Q. Did you think this was something she wanted to do?

"A. Yes . . ."

This Court is not impressed with defendant's contention that these incidents indicate affirmative consent, and so we find the trial court did not err in refusing his requested instruction. We dismiss the assignment of error.

■ Defendant contends in his fifth assignment of error that the jury verdict was the result of prejudicial remarks by the prosecutor. We note that the defendant failed to object to any of the eight comments by the prosecutor which he cites in this appeal. This Court has said on many occasions that timely objection must be made to prosecutive comment to preserve if for appeal. *Lung v. State, supra.* We, therefore, dismiss this assignment of error.

■ Defendant also complains that when the jury sent two questions by written note to the trial judge, he answered them without calling the jury and the parties back into the courtroom as mandated by 22 O.S.1971, § 894. The questions and answers which appear at page 46 of the record follow:

"Jury Question No. 1: Is the term we recommend the final say? All the law that the jury needs to apply to this case is contained in the Instructions sent to the juryroom.

"Jury Question No. 2: Do you want us to give a yearly sentence or a maximum or minimum? Again please refer to the law included in the Instructions and the verdict forms that are in the juryroom."

Defendant correctly notes that this Court's position on jury-judge communication is found in *Wilson v. State,* Okl.Cr., 534 P.2d 1325 (1975), where we stated:

" . . . [W]hen a communication between judge and jury occurs, after the jury has retired for deliberation, a presumption of prejudice does arise but that presumption . . . may be overcome if, on appeal, this Court is convinced that on the face of the record no prejudice to the defendant occurred." 534 P.2d at 1327.

We continue to adhere to that position and find in the case at bar that no prejudice to the defendant resulted from the described communication. We therefore dismiss this assignment of error.

For the above reasons, it is the opinion of this Court that the verdict in the District Court should be, and hereby is, *AFFIRMED.*

BLISS, J., concurs.

BRETT, J., concurs in results.